United States District Court
Southern District of Texas
**ENTERED**
January 18, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DEREK D. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00297 |
| | § | |
| JAVIER GONZALEZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

In December 2022, Plaintiff Derek D. Smith, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint under 42 U.S.C. § 1983 against the City of Corpus Christi ("the City"), Officer Javier Gonzalez, and Joe Elrod (collectively, "Defendants"). (D.E. 1). Smith's second amended complaint is now the operative complaint. (D.E. 21). Defendants have filed a joint motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), contending that Smith has failed to state a claim upon which relief can be granted and that this Court lacks jurisdiction over his state law claims. (D.E. 23). Smith has not responded. For the reasons discussed further below, it is recommended that Defendants' motion (D.E. 23) be **GRANTED** and Smith's claims be **DISMISSED** for failure to state a claim and lack of jurisdiction.

## I.    COMPLAINT AND ATTACHMENTS

Liberally construed, Smith alleges the following in the second amended complaint. (D.E. 21). He sues Elrod and Officer Gonzalez in their official capacities. (*Id.* at 6).[1] Smith, a black man, visited a park with his fiancée and stepson for a picnic in October 2022. (*Id.* at 2). Elrod, an employee of the Corpus Christi Parks and Recreation Department, began yelling at Smith and his fiancée, asking if they were smoking marijuana. Smith denied smoking marijuana and asked Elrod to stop yelling at him and his fiancée because Elrod was using profanity and scaring their stepson. Smith was the only African-American in the park at the time. (*Id.*). He asked Elrod for his name so he could file a complaint, and Elrod responded by cursing at him and threatening to call the police. (*Id.* at 2-3). Smith welcomed Elrod calling the police because he wanted to report that Elrod had racially profiled him. (*Id.* at 3). Officer Gonzalez and another officer arrived shortly after Elrod's call. Smith's fiancée asked Officer Gonzalez who was supposedly smoking marijuana, and Officer Gonzalez pointed at Smith. Officer Gonzalez asked to see Smith's identification, and Smith responded by requesting that Officer Gonzalez's supervisor be called. At this point, Officer Gonzalez attacked Smith, twisting his arms behind his back and arresting him. He was then searched and transported to a detention center. The accusations against him were false. (*Id.*).

---

[1] Smith does indicate that he "brings this action individually," but not in reference to the Defendants, and later indicates that he is suing Elrod and Officer Gonzalez in their official capacities. (D.E. 21 at 2, 6).

Smith raises several specific claims. (*Id.* at 3-5). First, he alleges that Elrod violated his rights by racially profiling him and defaming his character. (*Id.*). Second, Smith alleges that Officer Gonzalez violated his rights, defamed his character, and acted negligently by falsely imprisoning him. (*Id.* at 4). Third, Smith alleges that the City failed to properly train officers, which resulted in Officer Gonzalez violating his constitutional rights. (*Id.* at 5). Smith seeks $8,000,000 in damages and a declaratory judgment that Texas Government Code § 501.019 is unconstitutional under the Texas Constitution. (*Id.* at 5-6).

Smith attached a copy of Officer Gonzalez's incident report. (D.E. 21-1 at 5-6). Upon his arrival at the park, Elrod informed Officer Gonzalez that Smith was smoking marijuana. (*Id.* at 5). Several witnesses told Elrod that Smith was smoking marijuana, and Elrod asked him to leave, but Smith refused and threatened to fight him. Officer Gonzalez made contact with Smith, who smelled like marijuana and had red, watery eyes. Officer Gonzalez explained why he was speaking to him, but Smith became upset and would not identify himself. A woman with Smith, Villatalia Villalobos, stated that they had beer, but threw it out when Elrod asked them to. Because Smith was involved in a disturbance, smelled of marijuana, and had red, watery eyes, Officer Gonzalez believed him to be intoxicated in a public place and a danger to himself or others if left at the scene. (*Id.*).

## II.   RULE 12(B)(1) AND 12(B)(6) LEGAL STANDARDS

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether to grant a motion to dismiss, the court must not go outside the pleadings and must accept all well-

pleaded facts as true, looking at them in the light most favorable to the plaintiff. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003).

A pleading must include a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of what the claim is. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, but the plaintiff must nonetheless provide more than merely labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations in the complaint are assumed to be true, even if unlikely, but the allegations must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim has facial plausibility where the factual allegations allow the court to reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts that are merely consistent with a defendant's liability are insufficient. *Id.*

*Pro se* complaints are held to a less stringent standard than pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). When addressing a Rule 12(b)(6) motion on a *pro se* complaint, the court must examine all of the complaint, including attachments. *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005).

4

Rule 12(b)(1) provides for dismissal due to a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A facial attack on jurisdiction "requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Where a Rule 12(b)(1) motion is filed at the same time as other Rule 12 motions, the court should consider the jurisdictional issue before addressing the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Id.* Dismissal under Rule 12(b)(1) is appropriate if a claim is barred by state sovereign or Eleventh Amendment immunity. *See Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

### III. DISCUSSION

#### a. *Municipal Liability*

In the motion to dismiss, Defendants first argue that Smith has not adequately alleged facts that could give rise to municipal liability against the City. (D.E. 23 at 3-8). They argue that Smith's complaint does not allege either that a policymaker committed an unconstitutional act or that there was a pattern of conduct by non-policymakers. (*Id.* at 5-6). They contend that the complaint does not contain any allegations of a policy or pattern

by the City that allows its employees to violate the Fourth Amendment by falsely arresting individuals or committing excessive force. (*Id.* at 6). As to a failure to train, Defendants argue that Smith's complaint does not allege facts showing that the City's training amounted to deliberate indifference to constitutional rights or that any deficiency in training was the actual cause of the constitutional violation. (*Id.* at 7-8).

Smith has not responded.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Under § 1983, a municipality cannot be held liable solely under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be held liable if the violation of rights was "pursuant to official municipal policy of some nature." *Id.* It is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Id.* at 694. "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). A policy or custom may be either an officially adopted rule or a "persistent, widespread practice of city officials or employees

which, although not authorized or adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*

If relying on an unofficial policy or custom, a plaintiff must show actual or constructive knowledge by the municipality's governing body or an official with policy-making authority. *Id.* To establish a pattern, a plaintiff must show "sufficiently numerous prior incidents" of the specific constitutional violation at issue. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009). "[P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (internal citation omitted).

A "city can be liable under § 1983 for inadequate training of its employees," but the failure to train must amount "to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A single officer's inadequate training does not alone subject a municipality to liability. *Id.* at 390-91. To establish a failure-to-train claim, a plaintiff must plead facts plausibly establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). "[A] plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

7

Here, even liberally construed, Smith's complaint does not adequately allege a violation of rights that was pursuant to a City policy or custom, nor has he adequately alleged a failure to train, and he accordingly has not stated a claim for municipal liability. First, as to a custom or policy, Smith has not alleged any custom or policy of the City that led to the alleged deprivation of rights.  (*See generally* D.E. 21).  Instead, Smith alleges that Elrod and Officer Gonzalez both violated City ordinances.  (*Id.* at 4-5).  In short, Smith has not alleged any of the three requirements to establish municipal liability under *Monell*. *See Pineda*, 291 F.3d at 328 (listing the requirements).  As to Smith's failure-to-train claim, the complaint does not include any specific allegations regarding how any City training program was defective.  *Roberts*, 397 F.3d at 293.  Other than plainly alleging that the City failed to properly train police officers, Smith has also not alleged that the City was deliberately indifferent in adopting its training policy or that the inadequate training directly caused the alleged violations.  *Zarnow*, 614 F.3d at 170.  Smith has alleged, at most, one of the three requirements of a failure-to-train claim.   Accordingly, it is recommended that Smith's claims against the City be dismissed for failure to state a claim.

b.    *Negligence by Officer Gonzalez*

Defendants next argue that Smith's negligence claim against Officer Gonzalez must be dismissed because negligence does not implicate the Constitution and cannot form the basis of a claim under § 1983.  (D.E. 23 at 8-9).

Courts have routinely held that allegations of negligence do not support a § 1983 claim.  *Ruffin v. Landry*, No. 6:10-CV-1440, 2011 WL 1752084, at *2 (W.D. La. Feb. 2,

2011), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); *Hare v. City of Corinth*, 74 F.3d 633, 641–42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under § 1983); *Eason v. Thaler*, 73 F.3d 1322, 1328–29 (5th Cir. 1996) (negligence cannot support § 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); *Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Here, to the extent that Smith seeks to raise a negligence claim against Officer Gonzalez under § 1983, it is recommended that claim be dismissed for failure to state a claim because negligence does not support a § 1983 claim. *See id.*

     *c.    Equal Protection*

Defendants next argue that any equal protection claim based on racial profiling must fail because Smith has not alleged that any actions towards him were dissimilar to treatment of other people.  (D.E. 23 at 10).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "Because the

clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws." *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 932 (5th Cir. 1988).

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). "[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause." *Id.* "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (internal quotation marks omitted).

Here, Smith has not adequately alleged a violation of his equal protection rights by either Elrod or Officer Gonzalez. The factual allegations in the complaint combined with the attached police report indicate that Elrod received several reports that Smith was smoking marijuana and approached Smith. (D.E. 21 at 2; D.E. 21-1 at 5). Elrod advised Smith that he needed to leave the park, but Smith refused and became upset. (*Id.*). Elrod then called the police. (D.E. 21 at 3; D.E. 21-1 at 5). Officer Gonzalez responded to the call. (*Id.*). When he arrived, Elrod informed Officer Gonzalez that several people had told him that Smith was smoking marijuana. (D.E. 21-1 at 5). Elrod also told Officer Gonzalez that when he asked Smith to leave the park, Smith refused and threatened to fight him.

(*Id.*).  Officer Gonzalez then made contact with Smith, who smelled of marijuana and refused to answer any questions or identify himself.  (D.E. 21 at 3; D.E. 21-1 at 5).  Due to the reported disturbance and the smell of marijuana, Officer Gonzalez believed that Smith was intoxicated in a public place.  (D.E. 21-1 at 5).  Throughout his interactions with Elrod and Officer Gonzalez, Smith was the only African-American in the park.  (D.E. 21 at 1).

First, as to Elrod, Smith has not adequately alleged a violation of his equal protection rights because, considering both the complaint and the attached police report, Elrod was responding to the complaints of several other park attendees when he approached Smith. (D.E. 21-1 at 5).  Based on these complaints, he asked Smith to leave, and called the police when he refused.  (D.E. 21 at 2-3; D.E. 21-1 at 5).  Under these facts, Smith has not adequately established dissimilar treatment because he has not alleged that Elrod received similar complaints about any other person in the park and treated them differently. *Mahone*, 836 F.2d at 932.

Similarly, as to Officer Gonzalez, both Smith's complaint and the attached police report consistently indicate that he was responding to a call from Elrod, that he spoke to Elrod when he arrived, and that Smith refused to speak to Officer Gonzalez or provide any identification.  (D.E. 21 at 3; D.E. 21-1 at 5).  Even if Smith had adequately alleged an equal protection violation against Elrod, he has not done so against Officer Gonzalez because the facts alleged indicate that Officer Gonzalez was merely responding to a call and the information he was given.  The alleged facts do not show that Officer Gonzalez

treated Smith unequally to a similar individual of a different race. *Priester*, 354 F.3d at 424.

Accordingly, it is recommended that Smith's equal protection claims against Elrod and Officer Gonzalez be dismissed for failure to state a claim.

> d.   *Governmental Immunity*

Finally, Defendants argue that Smith's state-law and declaratory judgment claims must be dismissed for lack of jurisdiction because Texas has not waived its governmental immunity for those claims.  (D.E. 23 at 10-17).  As to his state-law claims for negligence and defamation, Defendants contend that Smith's claims do not fall within the limited waiver of governmental immunity in the Texas Tort Claims Act ("TTCA").  (*Id.* at 14-16).  As to Smith's declaratory-judgment claim, Defendants first argue that the statute that Smith seeks to have ruled unconstitutional has no relevance to his case.  (*Id.* at 16).  Second, they argue that, even if it was relevant, the City's retains immunity because the substance of his claims is in his other federal and state claims, and he cannot avoid immunity by trying to frame his claims as a declaratory judgment claim instead.  (*Id.* at 17).

"Governmental immunity is a common law doctrine," with waivers defined by the legislature. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011).  It entails immunity from both suit and liability.  *Id.*  The Texas Tort Claims Act ("TTCA") "provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances." *Texas Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001).  A plaintiff must affirmatively demonstrate subject-matter

jurisdiction by alleging a waiver of immunity. *Id.* "Sovereign immunity" and "governmental immunity" are often used interchangeably, but "sovereign immunity" protects the state, while "governmental immunity" protects subdivisions of the state, including cities. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

To establish subject-matter jurisdiction, a party suing a "governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission." *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Under the TTCA, governmental units are liable for property damage and personal injury caused by an employee's act, omission, or negligence while acting in the scope of employment if the injury or damage arises from the operation of a motor-driven vehicle or is caused by a condition or use of tangible personal or real property. Tex. Civ. Prac. & Rem. Code § 101.021. Further, the statute explicitly does not apply to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." *Id.* § 101.057(2). "Defamation is an intentional tort, for which the Texas Tort Claims Act does not waive immunity." *Hernandez v. Pulido*, 273 F.3d 392 (5th Cir. 2001).

When a party brings a claim against a state employee in their official capacity, the action is against the public office itself. *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996).

Here, this Court lacks jurisdiction over Smith's state-law claims of negligence and defamation because those claims do not fall within the waiver of governmental immunity in the TTCA. Smith has not alleged that his injuries arose from any actions involving the operation of a motor-driven vehicle or that they were caused by a condition or use of

13

tangible personal or real property.  (*See generally* D.E. 21); Tex. Civ. Prac. & Rem. Code § 101.021.  Further, defamation is an intentional tort that the TTCA explicitly does not apply to.  Tex. Civ. Prac. & Rem. Code § 101.0057(2); *Hernandez*, 273 F.3d at 392.

Finally, as to Smith's request for a declaratory judgment that Texas Government Code § 501.019 is unconstitutional under the Texas Constitution, he does not allege how § 501.019 is related to his claims.  Under § 501.019, the state may deduct the cost of incarceration and any assessed court fees and costs "from any monetary obligation owed to an incarcerated person."  Tex. Gov't Code § 501.019(a).  Based on his allegations, Smith is not incarcerated by the state.  Regardless, the claim is premature because, at this stage, Smith has not obtained any judgment and there is no monetary obligation that the state, even were it a party with a judgment against it, could seek to deduct any costs from. Accordingly, the Court lacks standing over any such claim because there has been no injury in fact that is either actual or imminent.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Smith acknowledges in his complaint that § 501.019 may not be relevant.  (D.E. 21 at 6).

Accordingly, it is recommended that Smith's state-law claims for negligence and defamation, along with his claim for a declaratory judgment, be dismissed for lack of jurisdiction.

## IV.  RECOMMENDATION

Accordingly, it is recommended that Defendants' motion (D.E. 23) be **GRANTED** and Smith's claims be **DISMISSED** for failure to state a claim and lack of jurisdiction.

Respectfully submitted on January 18, 2024.

_____
Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).